Submitted on record and briefs March 24, reversed and remanded for new trial October 11, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## DANA ANDREW BARNES,
*Appellant.*

CM0320675; A123837

145 P3d 261

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Ernest G. Lannet, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Julie A. Smith, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Yraguen, Senior Judge.**

YRAGUEN, S. J.

---

\* Brewer, C. J., *vice* Deits, J. pro tempore.
\*\* Yraguen, S. J., *vice* Wollheim, J.

### YRAGUEN, S. J.

Defendant appeals his convictions for burglary in the first degree, ORS 164.225, assault in the third degree, ORS 163.165, and theft in the second degree, ORS 164.045, raising four assignments of error. In his first assignment, defendant argues that the trial court erred in excluding the opinions of lay witnesses that the victim was intoxicated by, or under the influence of, methamphetamine. Because we agree that the court's exclusion of this evidence was error, we reverse.[1]

■ We state the facts in the light most favorable to the state because defendant was convicted after a jury trial. *State v. Hale*, 335 Or 612, 614, 75 P3d 448 (2003), *cert den*, 541 US 942 (2004). Monty Reith was in possession of a wrecked truck, which he stored in the garage of his home.[2] Reith is the uncle of Bo Wiebe. Wiebe and his mother (Reith's sister) previously lived in Reith's home but, by the time of the incidents leading to this case, both had moved out and Reith had told Wiebe not to come around Reith's home anymore. Wiebe, without Reith's permission, "sold" the stored wrecked vehicle to defendant in exchange for a different vehicle. Defendant, a codefendant, Wiebe, and two others went to Reith's home, to take the vehicle and tow it away. Reith confronted the group, asserted that he was the owner, and refused to unlock his garage. Defendant and Reith fought at several different junctures during this confrontation. Reith finally opened his garage, and defendant and the others took the truck. Defendant thereafter was indicted for burglary, robbery, assault, coercion, and theft.

At trial, defendant called Wiebe as a witness to testify that Reith was under the influence of methamphetamine at the time of the confrontation. The state objected on the ground that Wiebe's testimony on that point was not relevant. The court sustained the objection.

---

[1] Because we decide this case on the basis of defendant's first assignment of error, we do not consider the others, except to note the state's failure to address defendant's last two assignments of error.

[2] The home was one of three owned by Reith's mother (Wiebe's grandmother). For brevity, we refer to the home that Reith occupied as Reith's home.

After a conference in chambers, the court stated that it believed that an expert was required to testify "that a person under the influence of methamphetamine acts as the evidence [here] has shown." Defendant argued, however, that Wiebe's testimony would be probative of Reith's "mental condition and ability to recall, remember—observe, remember and recollect the events in question," that Reith's "being affected by methamphetamine could have certain characteristics for aggressiveness, which would also go toward the question of who was the initial aggressor in the confrontation," and that "Oregon law provides that lay people may [give an admissible] opinion about whether or not a person is intoxicated."

The court permitted defendant to make an offer of proof.[3] It included the following exchange with witness Wiebe:

"COUNSEL: [H]ave you ever seen your uncle after he used methamphetamine?

"A: Yes.

"Q: Have you ever seen him use methamphetamine?

"A: Yes.

"Q: Okay. How many times have you seen him use methamphetamine?

"A: A number of times over the years.

"* * * * *

"THE COURT: Well, during July of 2003 did you see your uncle use methamphetamine?

"A: Yeah. Once or twice, probably.

"COUNSEL (Continuing): Once or twice. And you saw the effect upon your uncle; is that correct?

"A: Yeah.

"* * * * *

---

[3] The questioning of Wiebe here was conducted by counsel for the codefendant, but expressly adopted, as well, by defendant's counsel as defendant's offer of proof. For simplicity, we refer to the questioner here as "Counsel."

"Q: On the day that you saw him, on July 5, 2003, did you see—did you form an opinion as to whether or not he had taken any methamphetamine?

"A: Yeah.

"Q: And what was your opinion?

"A: That he had probably been up for a couple of days or something. It looked like he was coming down.

"Q: And the reaction, the things that you'd look for as to coming down, what—what are the signs?

"A: His attitude, the way he carries himself, the way he just is quick to snap on anything, you know, irritable.

"Q: And did he appear that way that day, on July 5th?

"A: Yeah."

Defendant and the state later engaged in extensive debate about whether lay opinion is admissible to prove that a complaining witness was affected by methamphetamine. Defendant argued that lay testimony is admissible for that purpose just as lay witness testimony may be admitted to prove intoxication by alcohol, and that, to the extent that the witness is shown to have specific knowledge about the symptoms of methamphetamine use, Wiebe's testimony would be probative of Reith's "ability to observe and remember and recount." For its part, the state argued that it was not relevant whether the victim was under the influence at the time of the crime. Further, the state argued that, because "methamphetamine users give contradictory explanations of how it affects them[, the court should not] even be considering going in this direction unless there's an expert witness that is * * * like a medical expert who is actually familiar with the research."

The court ruled that defendant's proffered evidence was relevant because it was probative of the alleged victim's credibility and that it was "arguably relevant * * * to an issue of aggressive behavior and the defense of self-defense." Still, the court found the evidence to be not admissible, stating:

"[T]he admissibility is not governed by Oregon Evidence Code Rule 701 [but by OEC] 702. It's a matter requiring scientific, medical, or other specialized knowledge. I'll find that—and I'll make a finding to that—to that effect, that it's a proper subject of expert testimony, not lay testimony. I'll make a finding that Bo Wiebe and Aaron Cuniff are not qualified to give opinions as to whether or not Monty Reith was under the influence of methamphetamine on July 5, 2003. That'll be the ruling."

On appeal, defendant argues that the trial court erred in ruling that lay testimony was not admissible under OEC 701 to prove that Reith was under the influence of methamphetamine. The state responds that the trial court acted within its discretion in excluding the proffered evidence because, due to an inadequate offer of proof, defendant failed to preserve the issue that he raises on appeal, and because the lay opinion that defendant proffered was "not rationally based on personal perception or helpful to the jury," as is required under OEC 701.[4] We consider the state's preservation objection first.

■ ORAP 5.45 requires an appellant who assigns error to a trial court's exclusion of proffered evidence to show that the claim of error was raised and, by offer of proof, preserved in the lower court.[5] The state argues that defendant's "offer of

---

[4] OEC 701 provides:

"If the witness is not testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are:

"(1) Rationally based on the perception of the witness; and

"(2) Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

[5] ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court[.]"

ORAP 5.45(3) provides:

"Each assignment of error shall identify precisely the legal, procedural, factual, or other ruling that is being challenged."

proof regarding Wiebe's testimony * * * was insufficient."[6] According to the state:

> "defendant's arguments rested on an inaccurate description of the contents of his offer of proof. Defendant argued below that the lay witnesses should be allowed to testify that Reith appeared to be intoxicated by methamphetamine when the incident took place. But, in the offer of proof, Wiebe did not testify that Reith appeared to be intoxicated; rather he expressed the opinion that Reith might have been 'irritable' and 'quick to snap,' because he was 'coming down.' "

In sum, the state argues that defendant argued to the trial court that Reith was "intoxicated" by methamphetamine, but that the lay opinion that defendant sought to have admitted at trial would have proved only that Reith was "coming down."

■      We review the state's assertion that defendant's offer of proof was insufficient to preserve an issue advanced on appeal by considering whether the purposes that underlie the requirement were fulfilled by defendant's offer. *See State v. Stevens*, 328 Or 116, 122, 970 P2d 215 (1998) ("[I]n considering whether an objection at trial raised the 'issue' being advanced on appeal, an appellate court must view the facts in light of the purposes of fairness and efficiency that underlie the requirement."). The purpose of the rule requiring an offer of proof to preserve a claim of error when a trial court excludes testimony is "to assure that appellate courts are able to determine whether it was error to exclude the evidence and whether any error was likely to have affected the result of the case." *State v. Affeld*, 307 Or 125, 128, 764 P2d

---

ORAP 5.45(4)(a)(iii) provides, in part:

"If an assignment of error challenges the exclusion of evidence, appellant also shall identify in the record where the trial court excluded the evidence and where the offer of proof was made[.]"

[6] The state also argues that defendant failed to preserve the issue at the center of his second assignment of error, namely, that a second witness would have testified that Reith appeared to be under the influence of methamphetamine during the confrontation. As we stated previously, 208 Or App at 642 n 1, because we find defendant's first assignment to be well-taken, we do not address his other assignments of error. Accordingly, in the body of our opinion we consider only the portion of the state's preservation argument that is relevant to defendant's first assignment of error.

220 (1988) (holding that, to ensure that a record is adequate for appellate record, an offer of proof is required even where a trial court's alleged error restricted the scope of cross-examination).

Here, the purpose of the preservation rule was fulfilled because defendant's offer of proof was sufficient to ensure an adequate record on review. The state's argument to the contrary—that defendant's position at trial was not supported by the content of his offer of proof at trial—assumes a sharp distinction between the condition of being "intoxicated" by methamphetamine and the condition of "coming down" from its effects. It is not evident to us, however, that any line cleanly demarcates those conditions. More importantly, defendant's argument to the trial court simply was not couched exclusively in terms of intoxication. Instead, defendant also argued, at various points before and after his offer of proof, that Reith was "affected by," "under the effects of," or "under the influence of" methamphetamine.[7]

At trial the state drew a different distinction, stating—in a portion of the record that the state cites on appeal—that "coming down" is not, "by definition apparently * * * under the influence of methamphetamine." But, beyond that self-referential citation to the prosecutor's asserted definition, the state here offers no authority for its implicit assertion that a person "coming down" from a methamphetamine high is legally unimpaired by its effects. In any event, when the record is read in context, it is clear that, by his testimony, Wiebe was affirming defendant's theory that Reith was under that drug's influence. Accordingly, we hold that defendant's offer of proof was sufficiently related to the theory that defendant advanced to the trial court, and that is the basis for his first assignment of error on appeal. We conclude, then, that defendant properly preserved before the trial court the issue concerning the admissibility of evidence of whether Reith was intoxicated or under the influence or effect of methamphetamine.

---

[7] Similarly, in his combined argument for his first two assignments of error, defendant on appeal refers to "intoxicated by, or under the effect of, methamphetamine."

■■ We turn to the merits of defendant's first assignment of error, namely, that the trial court erred in ruling that Wiebe's testimony was not admissible under OEC 701. We review a trial court's evidentiary ruling for an abuse of discretion or errors of law, as appropriate to the subject matter. *State v. Cunningham*, 337 Or 528, 536, 99 P3d 271 (2004). The state, citing *State v. Lerch*, 296 Or 377, 677 P2d 678 (1984), and Kirkpatrick, *Oregon Evidence* 402-03 (3d ed 1996), argues for an abuse of discretion standard here because the challenged ruling concerned the admissibility of lay testimony. OEC 701 "adopts a liberal standard of admissibility for lay opinions." Kirkpatrick, *Oregon Evidence* § 701.03[1], Art VII-3 (4th ed 2002). But that standard of review does not necessarily govern review of a trial court's exclusions of such evidence. Here, defendant challenges the trial court's exclusion of such testimony. That exclusion, moreover, was categorical, with the trial court concluding, as noted above, that the question "whether or not [Reith] was under the influence of methamphetamine" was a "proper subject of expert testimony, not lay testimony." That ruling effectively limited the applicability of OEC 701. We therefore review for errors of law. *Cf. State v. Rogers*, 330 Or 282, 315, 4 P3d 1261 (2000) (appellate court reviews "without deference for errors of law whether a trial court properly applied OEC 702 to decide whether an expert is qualified to give testimony *relative to a particular topic*, because that determination is a question of the application of law" (emphasis in original)).

In defending the trial court's decision to exclude Wiebe's testimony, the state concedes that "it has been settled for some time that, given the proper foundation, a lay witness may testify regarding his or her opinion that a person was intoxicated, and even to the level of intoxication, without any physical or chemical testing or without being qualified as an expert witness." The state argues, however, that the trial court acted within its discretion to exclude Wiebe's testimony because, according to the state, Wiebe's lay opinion about Reith was "not rationally based on his perceptions and, therefore, would not have been helpful to the jury."

We take the state to be advancing, without expressly stating so, an alternative basis for the trial court's ruling. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining the right for the wrong reason rationale for affirmance). The state argues that

"[n]othing in the record suggests that Wiebe actually had observed Reith taking methamphetamine during the days or hours preceding the altercation or observed any symptoms that are unique to methamphetamine intoxication. Wiebe merely testified that he believed Reith was 'coming down' off the drug based only on his 'attitude, the way he carries himself, the way he just is quick to snap on anything, you know, irritable.' Because being quick to snap and irritable are not characteristics unique to methamphetamine use alone, the inference Wiebe drew from his observations was not rationally based on his perceptions and, therefore, would not have been helpful to the jury."

The validity of the state's argument depends on a hidden premise, namely that a witness's inference that a person is under the influence of methamphetamine is rational only where the characteristics perceived by that witness are uniquely retained by persons impaired by a particular drug. But that premise confuses rational inference with analytical deduction. Whether, under OEC 701(1), a witness's opinion or inference is rationally based on his or her perceptions depends on whether that opinion or inference is adequately supported by those perceptions. Kirkpatrick, *Oregon Evidence* § 701.03[1], Art VII-3. A witness's inference may be rationally drawn even where the perceptions from which that inference was drawn are susceptible to more than one plausible interpretation, and so capable of also supporting a different reasonable inference.

As the state concedes, Oregon case law has long recognized that lay opinion is admissible to prove that a person is intoxicated by alcohol. *See State v. Wright*, 315 Or 124, 132-33, 843 P2d 436 (1992) (police officer had reasonable suspicion to stop a defendant when he observed that the defendant was "visibly intoxicated"); *State v. Clark*, 286 Or 33, 38-40, 593 P2d 123 (1979) (lay testimony that a defendant lacked signs of intoxication admissible to impeach result of chemical

breath test even absent any foundation laid by expert testimony); *State v. Rand*, 166 Or 396, 401, 111 P2d 82, 112 P2d 1034 (1941) (eyewitness opinion that a defendant was intoxicated held admissible because the condition is a matter of common knowledge about the question on "which a witness who is not an expert is competent to answer"); *Guedon v. Rooney*, 160 Or 621, 638, 87 P2d 209 (1939) (witness who observed a person's condition may testify as to whether that person was intoxicated, the extent of such intoxication, and "whether that person had been drinking or was just recovering from a state of drunkenness"); *State v. Allen*, 120 Or 652, 655-56, 253 P 371 (1927) (lay opinion that a defendant was intoxicated held admissible where witness observed the defendant's general condition).

None of those decisions supports the state's position that a lay opinion is admissible to prove that a person is under the influence of a drug only where that opinion is based on the perception of characteristics that are unique to persons who are under the influence. In *Clark*, for example, the court took notice of 11 "observable symptoms or 'signs' of alcohol intoxication," 286 Or at 39-40, although none of them was uniquely characteristic of alcohol intoxication.[8]

This is not to suggest that expert opinion would not be useful on the question whether a particular set of observed symptoms is congruent with those typically observed in methamphetamine users. But the fact that expert opinion may be useful is not to say that expert opinion is required to prove a position; neither is it to say that lay opinion on the same matter is prohibited. As the *Clark* court, citing *Wigmore on Evidence*, pointed out, no policy "requires expert testimony to form a part of the evidence on subjects open to expert testimony" and "[n]o rule of preference exists for expert witnesses as such * * *." *Id.* at 38 (citation omitted).

Here, defendant's offer of proof established that, on a number of occasions before the confrontation at issue in this

---

[8] The 11 signs of alcohol intoxication noted by the court were: (1) odor of the breath, (2) flushed appearance, (3) lack of muscular coordination, (4) speech difficulties, (5) disorderly or unusual conduct, (6) mental disturbance, (7) visual disorders, (8) sleepiness, (9) muscular tremors, (10) dizziness, and (11) nausea. *Clark*, 286 Or at 39-40.

case, Wiebe had observed Reith when the latter was under the influence of methamphetamine and that, based on his own observation of Reith's behavior during defendant's confrontation with Reith, Weibe believed Reith to be under the influence of methamphetamine during that confrontation. Wiebe's inference that Reith was affected by methamphetamine, therefore, was rationally based on his perceptions of Reith. It was therefore error for the trial court to exclude Wiebe's testimony on that point.[9]

■ Defendant proffered Wiebe's testimony in part to impeach Reith's credibility. Reith's testimony was central to the state's case-in-chief. Such evidence could have been helpful to the jury. Viewing the record as a whole, we cannot say that the trial court's exclusion of Wiebe's testimony was harmless error.

Reversed and remanded for new trial.

---

[9] The state also takes the position that "Wiebe's testimony would not have been helpful to the jury" because "the inference Wiebe drew from his observations was not rationally based on his perceptions." The state's implicit assumption—that lay opinion that is not rationally based on a witness's perception is of necessity not helpful to the jury—appears to conflate, without justification, two plainly written independent requirements. *See* OEC 701(1), (2). Even if we were to assume, *arguendo*, that the helpfulness of a lay witness's testimony is wholly a function of the rational basis of his inference, we must reject the state's argument because we have concluded that Wiebe's testimony was rationally based on his perception of Reith.